UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CLAUDE SAFARI,<br><br>Petitioner,<br><br>v.<br><br>BRIAN ENGLISH,<br><br>Respondent. | CAUSE NO. 3:26-CV-364-CCB-SJF |

# OPINION AND ORDER

Immigration detainee Claude Safari, representing himself, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. ECF 3 at 1. The respondent has answered the petition and Safari filed a motion, which the court will construe as a reply. ECF 10, ECF 11. The Warden provided a supplemental status report, and Safari filed a supplemental reply. ECF 13, ECF 17. The petition is ready to be decided.

## BACKGROUND

Claude Safari is a refugee from the Democratic Republic of Congo (the DRC) who was born in Rwanda and admitted to the United States from the DRC on October 24, 2017. ECF 10-1 at 9-10. Safari has been convicted of over 20 misdemeanor offenses, including shoplifting, public intoxication, and violation of a protection order. *Id* at 10-13. On June 9, 2025, Safari was charged with trespassing in Lexington, Kentucky and the booking officer at Fayette County Detention Center referred him to Immigration and Customs Enforcement (ICE), who identified him as an unadjusted refugee with

deportable convictions. *Id.* at 10. He was served a notice to appear, charging him with being removable under 8 U.S.C. § 1227(a)(2)(E)(ii), for violating a protective order that was issued based on credible threats of violence, and under 8 U.S.C § 1227(a)(2)(A)(ii), for being convicted of two crimes involving moral turpitude. *Id.* at 2-5. He was then taken into ICE custody upon his release from the detention center. *Id.* at 10.

On August 12, 2025, an immigration judge ordered Safari removed to Rwanda, or in the alternative to the DRC. ECF 10-1 at 14-15. He waived appeal. *Id.* at 15. On November 6, 2025, ICE conducted a custody review and deemed Safari a danger to the community and determined that he would remain in ICE custody. *Id.* at 16-17.

This is Safari's second habeas petition challenging his detention. *See Safari v. Warden*, No. 3:26-CV-41-CCB-SJF, 2026 WL 507367 (N.D. Ind. Feb. 23, 2026). His first petition was denied because Safari had filed his petition while still in the six-month period of detention deemed presumptively reasonable by the Supreme Court for post removal-order detention, and, although his case crossed the six month mark while being briefed, he "ha[d] not presented anything to meet his initial burden to show good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 2.

Throughout his detention, Safari repeatedly contacted ICE about the status of his removal. On November 3, 2025, ICE informed Safari that they were awaiting his travel documents from either Rwanda or the DRC. ECF 5 at 2. On December 1, 2025, ICE told Safari that "there ha[d] been a lot of issues with travel documents in [his] case " as "the ID provided for [his] travel documents to Congo listed [him] as a refugee and was

insufficient and need[ed] to be corrected." *Id.* On December 4, 2025, Safari was informed that ICE had received incomplete travel documents and were working with both countries to correct the issue. *Id.* at 3. In response to an inquiry from Safari a few days later, ICE replied that they were "awaiting responses to the travel document requests made to both Congo and Rwanda." *Id.* On December 21, 2025, ICE told Safari that there had been "an issue when the Rwandan Govt. sent [his] ID card, ICE ERO is communicating with Rwanda and Congo." *Id* at 4. On December 30, 2025, Safari communicated with the Rwandan embassy and was told that "they never received any request from ICE." *Id.* On January 6, 2026, ICE updated Safari and told him that ICE Enforcement and Removal Operations (ERO) was still awaiting processing of his travel documents from both Rwanda and the DRC. *Id* at 4-5.

Safari filed this habeas petition in March 2026, arguing his continued detention was unlawful because his removal was not reasonably foreseeable. He argued his removal was not reasonably foreseeable because neither Rwanda nor the DRC recognizes him as a citizen due to his Banyamurange[1] heritage and ICE cannot obtain travel documents for him.

In answering the petition, the Warden provided a declaration from a deportation officer who stated that Safari was scheduled for removal on July 2, 2026, to the DRC. ECF 10-2 at 4. After that date, Safari filed a reply, stating that he had not been removed and explaining what had happened. ECF 11. He said he was transported to

---

[1] Safari's ethnic group is alternatively spelled Banyamulenge, Banyamurrange, or Banyamurange.

Washington, DC, purportedly for removal to Rwanda, but when he arrived was told by ICE that he was instead going to be removed to the DRC. He was not, in fact removed. In response to Safari's filing, the warden reported that ICE intended to remove Safari to the DRC using a Department of Homeland Security (DHS) Certificate of Identity for Departure. *Id.* at 2, ECF 13 at 1. However, the DRC deemed the certificate insufficient and halted his removal. ECF 13 at 1.

The Warden states that ICE is currently seeking the issuance of travel documents from the DRC to effectuate Safari's removal. ECF 13. DHS has sought a travel document through the ICE attaché to the embassy of the DRC, though there is no evidence that a travel document has been submitted to the DRC yet. *Id.*

Finally, Safari reiterates that his removal is not reasonably foreseeable due to his lack of citizenship in either country, the administrative delays that have followed, as well as the current Ebola outbreak in the DRC creating a public health emergency. ECF 11 at 3.

## SUBJECT MATTER JURISDICTION

The Warden first argues that the court lacks subject matter jurisdiction over Safari's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). This court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For the reasons previously stated, jurisdiction is secure. *See Liang v. English*, No. 3:25CV1052 DRL-SJF, 2026 WL 835853, at *1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.); *Pho v. Noem*, No. 3:25-CV-977-CCB-SJF, 2025 WL 3750684, at *1-*4 (N.D. Ind. Dec. 29, 2025) (Brisco, J.) (discussing § 1252(g)).

MERITS

Regarding the merits of the petition, the Warden first argues that Safari's detention is lawful under 8 U.S.C. § 1231 because the statute authorizes detention pending execution of a removal order. However, beyond the "removal period,"[2] which for Safari ended in November 2025, continued detention is authorized only for certain noncitizens delineated in § 1231(a)(6) and only as long as removal is reasonably foreseeable. *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) ("[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."). The Supreme Court has instructed that once removal is not reasonably foreseeable, "the court should hold continued detention unreasonable and no longer authorized by statute," though any release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 699–700.

In *Zadvydas*, the Supreme Court adopted a "presumptively reasonable period of detention" of six months in recognition of the Executive Branch's primary responsibility in foreign policy matters and the sometimes sensitive nature of repatriation negotiations that may call for difficult judgments regarding whether removal is reasonably foreseeable. *Zadvydas*, 533 U.S. at 689. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the

[2] The removal period begins on the latest of three events: (1) the date the removal order becomes administratively final, (2) the date of a reviewing court's final order if the noncitizen seeks judicial review and the court orders a stay of removal, or (3) upon the noncitizen's release from non-immigration detention or confinement. 8 U.S.C. § 1231(a)(1)(B).

reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. Because Safari has been in detention for longer than six months, the court turns to the analysis under *Zadvydas*.

Safari's citizenship issue explains the difficulties and delays ICE has encountered in effectuating the removal. Other courts have noted that individuals who share Safari's ethnicity have been denied citizenship and travel documents to both Rwanda and the DRC. *See, e.g., Nshimiyama v. Marin,* Case No. EDCV 26-00949-KK-MARx, 2026 WL 1045642, at *3 (C.D. Cal. Mar. 2, 2026) (granting habeas relief where a Banyamurange refugee born in Rwanda with Congolese-born parents was denied citizenship by both Rwanda and the DRC). These difficulties, along with the documented back and forth ICE has had with Rwanda and the DRC regarding travel documents, provide good reason to believe that Safari's removal is not reasonably foreseeable.

The Warden has not rebutted this showing. Relevant to the court's analysis is that Safari has been in post-removal-order detention for more than 15 months, more than double the presumptively reasonable period set by the Supreme Court. As the Supreme Court has instructed "for detention to remain reasonable, as the period of prior postremoval [order] confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas,* 533 U.S. at 701. Here, a complete travel document request has still not been submitted.

The Warden offers only a vague attestation that the government is continuing to work on preparing an application to obtain travel documents for Safari from the DRC. The government has not given any reason why the current attempt to submit a travel

document request to the DRC will yield a different result than their numerous attempts over the past year. This showing does not persuade the court that Safari's removal is likely to occur within the reasonably foreseeable future. He must be released.

For these reasons, the court:

(1) **GRANTS** the petition for writ of habeas corpus (ECF 5) and **ORDERS** the respondent to release Claude Safari on appropriate conditions of supervised release and to certify compliance with this order by filing a notice with the court by **November 3, 2026**; and

(2) **DIRECTS** the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure his release.

SO ORDERED on November 2, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT